NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
Sixth Circuit Rule 28(g) limits citation to specific situations.
Please see Rule 28(g) before citing in a proceeding in a court in the Sixth Circuit. If cited, a copy must be served on other parties and the Court.
This notice is to be prominently NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

No. 03-3322

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
JUN 2 5 2004
LEONARD GREEN, Clerk

| | |
|---|---|
| SALLY HARRISON-PEPPER, Ph.D, ) | |
| ) | |
| Plaintiff-Appellant, ) | |
| ) | |
| v. ) | ON APPEAL FROM THE UNITED |
| ) | STATES DISTRICT COURT FOR THE |
| MIAMI UNIVERSITY, ) | SOUTHERN DISTRICT OF OHIO |
| ) | |
| Defendant-Appellee. ) | |
| ) | |

Before: GUY, GILMAN, and COOK, Circuit Judges.

COOK, Circuit Judge. Sally Harrison-Pepper appeals the district court's grant of summary judgment in favor of her employer, Miami University of Ohio, on her sex and disability discrimination and retaliation claims. Because Harrison-Pepper presented insufficient evidence to establish any triable issues of fact, this court affirms the judgment of the district court.

I

Miami University hired Harrison-Pepper in 1988 as a tenure-track professor for its School of Interdisciplinary Studies. That same year, the University also hired Hays Cummins as a tenure-track professor in the same department. Cummins's starting salary exceeded Harrison-Pepper's by $2,000.

No. 03-3322
*Harrison-Pepper v. Miami Univ.*

Sometime around 1990, Harrison-Pepper learned of this disparity and, at her request, the University began adjusting her salary so that it would eventually equal Cummins's.

In the meantime, Harrison-Pepper was diagnosed with lupus, but did not seek workplace accommodations for her disease until 1992, when the University agreed (1) to expect Harrison-Pepper to participate only in the most important committee service, such as promotion deliberations and division meetings; (2) to expect her to produce a smaller quantity of scholarly research and writing; (3) to reduce the number of her advisees; and (4) to try to avoid assigning her to teach early-morning classes or classes she had not previously taught.

In 1995, the University promoted Harrison-Pepper to full professor. In the spring of 1996, Harrison-Pepper taught at another university. For the 1996-97 academic year, she was on sabbatical. She took medical leave in the fall of 1997, then taught at another university for the 1998-99 academic year. Thus, over the course of three-and-a-half years, Harrison-Pepper taught at Miami just one semester. Unhappy with her raises during these years, she complained to the University and to the EEOC. Although she received a large raise just prior to lodging her complaints, her raises directly afterward were much smaller. At the time Harrison-Pepper filed this action, she was the lowest-paid of the eight full professors in her department (the second lowest was the only other female full professor; although two female associate professors received higher salaries). Harrison-Pepper's salary was $13,314 less than Cummins's.

- 2 -

No. 03-3322
*Harrison-Pepper v. Miami Univ.*

Harrison-Pepper attributes this disparity between her salary and Cummins's to the University's sex discrimination, in violation of Title VII, 42 U.S.C. § 2000e-2 *et seq.*, and the Equal Pay Act, 29 U.S.C. § 206. She claims that the University also violated the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*, by not taking into account its accommodations for her disability in evaluating whether her work merited larger raises. Finally, Harrison-Pepper claims that after she grieved internally and filed a discrimination charge with the EEOC, the University retaliated against her by awarding her smaller raises than she deserved.

The district court granted summary judgment to the University on all claims.

II

This court reviews the district court's grant of summary judgment de novo. *Standard Constr. Co. v. Maryland Cas. Co.*, 359 F.3d 846 (6th Cir. 2004).

A. Timeliness

The University argues that Harrison-Pepper's Title VII, Equal Pay Act, and Rehabilitation Act claims are barred, in whole or in part, by the corresponding statutes of limitations. Harrison-Pepper counters that her complaint sets forth continuing violations of those Acts, and therefore all of the University's conduct is actionable. We need not resolve this issue. Because we conclude that Harrison-Pepper presented insufficient evidence to support a finding in her favor on any of her claims, we assume without deciding that the claims are not time-barred.

No. 03-3322
*Harrison-Pepper v. Miami Univ.*

## B. Title VII

A plaintiff alleging a Title VII violation must first establish a prima facie case of discrimination by showing "(1) she was a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position; and (4) that she was treated differently from similarly situated members of the unprotected class." *Gettings v. Bldg. Laborers Local 310 Fringe Benefits Fund*, 349 F.3d 300, 305 (6th Cir. 2003). The district court found that Harrison-Pepper's Title VII claim could not survive summary judgment because she presented insufficient evidence to satisfy the fourth element of a prima facie case of gender discrimination—that the University treated her differently from similarly-situated male professors.

Harrison-Pepper argues that the district court erred in relying on the University's proferred reason for the disparity between her salary and Cummins's in deciding whether she could show that the University treated her differently than male professors. Harrison-Pepper's argument relies on *Thomas v. Denny's, Inc.*, 111 F.3d 1506, 1510 (10th Cir. 1997) ("[R]elying on a defendant's reasons for the adverse action as a basis for ruling against a plaintiff at the prima facie stage raises serious problems under the *McDonnell Douglas* framework because it frustrates a plaintiff's ability to establish that the defendant's proffered reasons were pretextual.") and *McCrory v. Kraft Food Ingredients*, No. 94-6505, 1996 WL 571146 (6th Cir. 1996).

Neither of the cases Harrison-Pepper cites concerned the fourth element of a prima facie case of discrimination; instead, both examined plaintiff's evidence in support of the third

No. 03-3322
*Harrison-Pepper v. Miami Univ.*

element—whether the plaintiff was qualified for the position. The courts in those cases recognized the impropriety of considering at the prima facie case stage the reasons offered by an employer for firing or failing to promote a plaintiff as evidence that the plaintiff was not qualified. Here, however, the issue is whether Harrison-Pepper presented sufficient evidence to establish a triable issue of fact regarding the University's treatment of her as compared to any similarly-situated male counterpart. We agree with the district court that Harrison-Pepper failed to present such evidence.

Moreover, even if Harrison-Pepper had established a prima facie case, summary judgment would nevertheless be appropriate on this claim because Harrison-Pepper presented insufficient evidence to rebut the University's proffered reasons for the disparity between her salary and Cummins's. The University presented evidence showing that merit differences—especially for the time Harrison-Pepper was absent from Miami—and budgetary constraints are the legitimate, nondiscriminatory reasons that Harrison-Pepper's salary is lower than the salaries of her male counterparts.

The burden thus falls to Harrison-Pepper to present evidence that the University's explanation (1) has no basis in fact; (2) did not actually motivate the University's action; or (3) was insufficient to motivate the action. *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994). Harrison-Pepper argues that her absence from campus did not motivate the University's actions because male professors received higher raises than she did after returning from leaves of absence. Specifically, Harrison-Pepper compares her post-leave raises to those of two male professors, Cummins and William Green. The University counters that these comparisons are

No. 03-3322
*Harrison-Pepper v. Miami Univ.*

inappropriate because (1) for the most part, they occurred in different years and thus varied in accordance with the funds available that year; and (2) only Harrison-Pepper was absent from the University for six nearly-consecutive semesters.

Harrison-Pepper contends that her absences did not preclude the University from measuring her merit-based contributions, pointing to Dean Curtis Ellison's assessment of her work as "high," the same level assigned to Cummins. Ellison explained, however, that although the quality of the two professors' work was "high," the two were not exactly the same because the University judged each person according to individualized expectations. Ellison's statement therefore does not create a genuine issue of material fact undermining the University's proffered reasons for its actions.

The only other evidence Harrison-Pepper offers is her own averment that her service, scholarship, teaching, awards, and activities were comparable to the work of her male counterparts. Harrison-Pepper's belief that she merited a higher salary does not prove that the University's explanation is pretextual. Thus, because Harrison-Pepper presented no evidence contradicting the University's proffered reasons for the amounts of her raises, the district court did not err in granting summary judgment in favor of the University on Harrison-Pepper's Title VII claim.

C. Equal Pay Act

To establish a prima facie case under the Equal Pay Act, a plaintiff must present evidence that the defendant employer paid employees of one sex less than employees of the opposite sex "for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and

- 6 -

No. 03-3822
*Harrison-Pepper v. Miami Univ.*

which are performed under similar working conditions...." 29 U.S.C. § 206(d)(1). "'Equal work' does not require that the jobs be identical, but only that there exist 'substantial equality of skill, effort, responsibility and working conditions.'" *Buntin v. Breathitt County Bd. of Educ.*, 134 F.3d 796, 799 (6th Cir. 1998). Factors relevant to determining whether professors perform equal work include hire dates, prior experience, workload requirements, departmental placement, and evaluation criteria. *Kovacevich v. Kent State Univ.*, 224 F.3d 806, 827 (6th Cir. 2000) ("The chronology of their time at KSU is quite similar: having been hired within one year of one another with similar prior experience; undertaking the same workload requirements while there; working within the same department; and having been evaluated under the same criteria by the same [faculty advisory committee] in the same years.").

If a plaintiff establishes a prima facie case, the burden shifts to the defendant to show that the pay differential is justified under one of the four affirmative defenses set forth in the Act: (1) a seniority system; (2) a merit system; (3) a system based on quantity or quality of production; or (4) any factor other than gender. 29 U.S.C. § 206(d)(1). The defendant is "entitled to summary judgment [only if] it has satisfied its burden of demonstrating that there is no genuine dispute on any material fact in regard to this issue." *EEOC v. Romeo Cmty. Schs.*, 976 F.2d 985, 989 (6th Cir. 1992).

Harrison-Pepper contends that the district court erred in concluding that she presented "very little in the way of evidence of performance quality, work load, or credentials with respect to her own employment by [the University] and none with respect to the employment of Hays Cummins,"

- 7 -

No. 03-3322
*Harrison-Pepper v. Miami Univ.*

thereby failing to establish the "equal work" requirement of a prima facie case. (Slip Op. at 13.) Even if Harrison-Pepper presented sufficient evidence of "equal work," however, the University established that no genuine issues of fact exist regarding its justification for the pay differences—its merit-based system for awarding raises.

The University offered affidavits from several former deans stating that the raise system is merit-based, with amounts of raises determined by professors' (1) teaching and advising, (2) scholarship and creative activity, and (3) professional service. The University's use of subjective criteria does not preclude its merit-based system from constituting an affirmative defense. The University presented sufficient evidence explaining the factors—particularly Harrison-Pepper's extended absences from the University—that it considered in determining Harrison-Pepper's raises to establish that no genuine issues of fact exist regarding the reason for the disparities between Harrison-Pepper's salary and the salaries of male professors. Thus, we find that the district court did not err in granting summary judgment to the University on Harrison-Pepper's Equal Pay Act claim.

### D. Rehabilitation Act

To succeed on a claim under the Rehabilitation Act, Harrison-Pepper must show that (1) she is a disabled individual under the Act; (2) aside from this disability, she is qualified for her position; (3) the University subjected her to discrimination solely by reason of her disability; and (4) the University receives Federal financial assistance. 29 U.S.C. § 794(a).

- 8 -

No. 03-3322
*Harrison-Pepper v. Miami Univ.*

The district court granted summary judgment in favor of the University after concluding that Harrison-Pepper failed to satisfy the third element—she presented no evidence that the University based its salary decisions on any reduction in Harrison-Pepper's productivity (or any other factor) attributable to the University's accommodations of her lupus. The University was unaware of her lupus at the time it hired her, so it could not have awarded her a smaller starting salary as a result of her disability. Although Harrison-Pepper claims on appeal that the University subsequently awarded her smaller raises than non-disabled professors because of her reduced participation in scholarly and campus activities (despite the accommodation agreement), nothing in the record supports her contention. The deans' testimony focuses on Harrison-Pepper's absence from the Miami campus for six of seven semesters (with all but one of the absences unrelated to her medical condition). While the University agreed to accommodate Harrison-Pepper's disability by reducing certain of its expectations of her, the University did not agree to grant her large merit-based raises when she was absent from the University. Accordingly, the district court's grant of summary judgment to the University with respect to this claim was not erroneous.

### E. Retaliation

Section 704(a) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a), forbids employers from taking adverse action against an employee in response to the employee's allegations of discriminatory employment conditions. *Cooper v. City of North Olmsted*, 795 F.2d 1265, 1272 (6th Cir. 1986). To withstand summary judgment on this claim, Harrison-Pepper must present evidence that (1) she engaged in an activity protected by Title VII; (2) this exercise of her protected civil rights

No. 03-1322
*Harrison-Pepper v. Miami Univ.*

was known to the University; (3) the University thereafter took an employment action adverse to her; and (4) a causal connection existed between the protected activity and the adverse employment action. *Canitia v. Yellow Freight Sys., Inc,.* 903 F.2d 1064, 1066 (6th Cir. 1990). Harrison-Pepper notes that after she complained both internally and to the EEOC, her raise percentages decreased. Temporal proximity, however, is insufficient in and of itself to establish causation. *See Cooper*, 795 F.2d at 1272 ("The mere fact that Cooper was discharged four months after filing a discrimination claim is insufficient to support an inference of retaliation."). We therefore conclude that the district court did not err in granting summary judgment to the University on Harrison-Pepper's retaliation claim.

### III

For the foregoing reasons, this court affirms the district court's grant of summary judgment to the University on all claims.

No. 03-3322
*Harrison-Pepper v. Miami Univ.*

**RONALD LEE GILMAN, Circuit Judge, concurring in part and dissenting in part.**
I fully concur in the majority's conclusion that Miami University was entitled to summary judgment on Harrison-Pepper's Rehabilitation Act and retaliation claims. But I disagree with the majority's determination that Harrison-Pepper failed to show that a genuine issue of material fact exists regarding her Title VII and Equal Pay Act claims.

This court reviews a district court's grant of summary judgment de novo. *Therma-Scan, Inc. v. Thermoscan, Inc.* 295 F.3d 623, 629 (6th Cir. 2002). Summary judgment is proper where there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the district court must construe all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

"[S]ummary judgment should not be permitted except 'where it is quite clear what the truth is.'" *Koepfle v. Garavaglia*, 200 F.2d 191, 193 (6th Cir. 1952) (*quoting Sartor v. Arkansas Natural Gas Corp.*, 321 U.S. 620, 627 (1944). Wright and Miller's *Federal Practice and Procedure* treatise supports the proposition that summary judgment should not be granted

No. 03-3322
*Harrison-Pepper v. Miami Univ.*

> merely because the facts the party offers appear more plausible than those tendered in opposition, or because it appears that the adversary is unlikely to prevail at trial. . . . Therefore, if the evidence presented on the motion is subject to conflicting interpretations, or reasonable people might differ as to its significance, summary judgment is improper.

Federal Practice and Procedure § 2725 (3d ed. 1998).

This is a close case. In my opinion, however, the persuasiveness of Miami's articulated reasons for Harrison-Pepper being the lowest-paid tenured professor in her department is not "so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252. As the majority notes, Miami hired Harrison-Pepper in 1988 as a tenure-track professor. Hays Cummins was also hired as a tenure-track professor in the same department and his salary exceeded Harrison-Pepper's by $2,000. In response to Harrison-Pepper's argument that she was underpaid when she started and that she received consistently inferior raises (both in percentage and amount), Miami contends that Harrison-Pepper's raises were smaller because she was on leave for substantial periods of time between the spring of 1996 and the spring of 1999. No other faculty member in Harrison-Pepper's department took as much leave as she did during those years, but Dr. William Green, also a professor in the SIS Department, provides a basis of comparison for the raises that Harrison-Pepper received after her semesters away from Miami.

No. 03-3322
*Harrison-Pepper v. Miami Univ.*

Green took off the fall semester of 1989, spring semester of 1990, fall semester of 1994, spring semester of 1995, spring semester of 1998, and the fall semester of 1999. Harrison-Pepper took off the spring semester of 1996, the fall semester of 1996, the spring semester of 1997, the fall semester of 1997, the fall semester of 1998, and the spring semester of 1999. On average, Green received salary increases of 4.78% after returning from one or two semesters away from Miami, whereas Harrison-Pepper received average increases of only 2.19%. I recognize that Harrison-Pepper took more leaves of absence and that her time away from Miami was more concentrated than Green's, but to make a judgment based upon this evidence, I believe, would be usurping the role of the jury.

"In considering a motion for summary judgment, the judge's function . . . is limited to determining whether sufficient evidence has been presented to make the issue a proper jury question, and *not to judge the evidence* . . . ." *Bultema v. United States*, 359 F.3d 379, 382 (6th Cir. 2004) (quotation marks omitted) (emphasis added). The majority appears to have evaluated the evidence and determined that Harrison-Pepper would not be able to prevail at trial on the issue of whether Miami's rationale for her smaller raises was pretextual. She in fact might not prevail at trial, but such an evaluation is inappropriate at the summary judgment stage of the proceedings. Because I believe that Harrison-Pepper has raised a genuine issue of material fact with regard to pretext, I would reverse and remand on her Title VII and Equal Pay Act claims.